## Harriet Francis v. Charles H. Barry, Jr.

*Contract by correspondence—Statute of frauds—Agreement for sale of real property—Description of premises.*

1. A complete and binding contract may be created by letters or other writings relating to one connected transaction, if, without the aid of parol testimony, the parties, the subject-matter, and the terms of the contract may be collected.

2. Correspondence showing the acceptance of an offer to sell and convey the property known as the "Schoolcraft-store Property" for $2,500, $2,000 in cash on delivery of deed, and two notes amounting to $500, to be signed by the vendee, and to be payable from the rents of the property sold, the rent accrued to the date the deed was to bear to be applied on the notes,—amounts to a complete and binding contract, containing all of the essential terms requisite to comply with How. Stat. § 6181.

3. The description of property in correspondence for its purchase and sale as the "Schoolcraft Store," the vendee having formerly owned the property, and her husband, as her agent, having rented it and collected the rent for the vendor, is sufficient.

4. A description in a deed as the "Schoolcraft Store" is a sufficient designation to convey the store and the parcel of land upon which it stood, [it being] known, used, and occupied therewith.

Error to Kalamazoo. (Pealer, J., presiding.)  Argued February 25 and 26, 1888.  Decided April 13, 1888.

*Assumpsit.*  Defendant beings error.  Affirmed.  The facts are stated in the opinion.

*H. H. Riley* and *Howard & Ross,* for appellant.

*Dallas Boudeman,* for plaintiff.

Champlin, J.  This action was brought to recover damages for a breach of contract made by the defendant with the plaintiff, by which he agreed to sell and convey to her a cer-

tain store property situated in the village of Schoolcraft, in the county of Kalamazoo, Michigan, for the consideration of $2,500,—$2,000 to be paid down in cash, and the balance by her note of $500, to be paid by the rent of the store as it accrued, at the rate at which it was being rented, to wit, $400 per year, and which was payable in monthly install-ments.

The declaration sets up that the contract is in writing, and consists of letters written between the parties on and prior to July 1, 1886; that the defendant claimed to be the owner of the real estate described in the first count of the declaration as—

"A strip of land twenty-six (26) feet wide off the north side of the north-west quarter of lot No. one hundred and thirty-two (132), and also the north-east quarter of the same lot, excepting a strip twenty-two (22) feet wide on the south side of the last-named parcel, according to the recorded plat of the village of Schoolcraft, always reserving from the north side of both parcels an undivided one-half of the wall, and the land on which it stands,"—

And generally known as the "Schoolcraft Store," and the "Schoolcraft-store Property."

The declaration also alleges that, at the request of defendant, the completion of said agreement by the parties was extended until, to wit, September 15, 1886, when defendant ascertained he had no title to the property, but that the same was in Charles H. Barry, Sr., father of defendant; and defendant stated that he would procure a deed from his father, to be made to plaintiff, of said property, within a reasonable time after said fifteenth day of September, and requested plaintiff to allow him a reasonable time to procure such deed, which plaintiff consented to do.

Plaintiff avers that at all times from said July 1, 1886, until November 18, 1886, she was ready to accept from defendant a deed of the said premises, and pay defendant the amount which she had agreed to pay him, as aforesaid, and

so notified defendant at several times, and within a reasonable time after said fifteenth day of September, 1886, she so notified the defendant, and offered to carry out her contract with him, and requested him to carry out said contract with her, and convey, or cause to be conveyed, to her said property; that defendant did not nor would, within a reasonable time after July 1, 1886, nor within a reasonable time after September 15, 1886, carry out his said contract, or convey, or procure to be conveyed, to plaintiff the said premises; but, before said reasonable time had elapsed, said defendant sold the premises to one William Roberts, and procured a deed thereof to be made to him by said Charles H. Barry, Sr., for a consideration of $3,000 ; and by reason thereof said defendant placed it beyond his power to carry out his contract with plaintiff, and by that act excused plaintiff from making any formal tender of the purchase money to him, although plaintiff was ready and willing, and offered, to pay the same to defendant as soon as he would have made to her such a conveyance as he agreed to make.

The law appears to be well settled that a complete and binding contract may be created by letters or other writings relating to one connected transaction, if, without the aid of parol testimony, the parties, the subject-matter, and the terms of the contract may be collected. *Allen v. Bennet,* 3 Taunt. 169; *Jackson v. Lowe,* 1 Binr. 9; *Dobell v. Hutchinson,* 3 Adol. & E. 355; *Jones v. Williams,* 7 Mees. & W. 493; *Telegraph Co. v. Railroad Co.,* 86 Ill. 246; *Moore v. Mountcastle,* 61 Mo. 424; *Abbott v. Shepard,* 48 N. H. 14.

The plaintiff recovered judgment in the court below, and defendant brings the case into this Court by. writ or error, and insists that the judgment ought to be reversed for the following reasons:

"1. Because the plaintiff failed to show a sufficient description of the property.

"2. Because she failed to show a sufficient contract, in

writing, to take the case out of the statute of frauds; and for the reason that the minds of the parties never met in contract relations.

"3. Because, all the evidence there was in the case bearing on the contract being undisputed, the court erred in submitting it to the jury to determine whether or not there was such a contract.

"4. There was nothing in the case to submit to the jury.

"5. There was error in the admission of other evidence, to which we will specifically call the attention of the Court."

The correspondence is too lengthy to warrant us in setting it forth in detail. It consisted of letters written to and from the defendant. Those written to defendant were, for the most part, written by plaintiff's husband, and, as she testifies at her request; and the replies to such letters were addressed to him by the defendant. As no question is made as to his authority to so act for plaintiff, but the correspondence conducted by him has been treated throughout as hers by both parties, we shall so regard it.

Notice was given to the defendant to produce the letters written by and on behalf of the plaintiff upon the trial of the cause, and, upon being requested so to do upon the trial, defendant's counsel replied: "We have some of them, and some of them have been destroyed." No explanation was given of the reason why, or the circumstances under which, they were destroyed, or by whom. No great lapse of time occurred during which they might become lost as deemed unimportant. The correspondence closed in the fall of 1886, and this suit was commenced soon after, and was tried in June, 1887.

He was apprised by a letter from her of date October 8, 1886, to which he replied under the same date, that she was advised that his letter made out a contract of sale, and hence he would see the importance of preserving the correspondence so far as it was in his hands, especially if it failed to show what was the subject-matter of the sale. The plaintiff

was under the necessity of resorting to secondary evidence of that portion of the contract. And if there should be any discrepancy between the parties in their testimony regarding the contents of such letters as he received, and failed to produce, the presumption, from the fact of his having destroyed testimony in his hands, would be against his assertion, and in favor of hers, which the jury would be entitled to consider when weighing their testimony.

The correspondence starts with a letter written by the plaintiff to defendant, asking him if he would sell that Schoolcraft store for $3,000, and take $1,000 in goods; to which he replied, under date of December 22, 1884:

" I will sell the property for $3,000, but I can't take goods. We have a big stock, and are trying to reduce it, but it is slow business. Can you tell me any one who well let me have $2 000 on the property? I would like to raise that amount. Please let me know, and oblige."

She afterwards wrote offering him $2,500 for the store,—$2,000 in money, and $500 in notes, and apply the rent on the notes. He replied August 26, 1885, saying that he could not sell that property for less than $3,000, and that it seemed to him that she would do well to buy it at that price, and offering to take $2,500, and her note for the other $500, and count the rent against it of the lease, which would pay more than half of it.

Plaintiff again wrote him, offering him $2,000 in money, and her note for $500, and let the rent apply on the note; to which he replied September 7 or 9, 1885, as follows:

" I will sell you that property for what you offer, if you give me the rent until April 1. I want to sell it. I have no time to attend to it, or look after it. It's cheap, I am sure, and thought I never would sell for that; but I think it's best to let it go, if I can get that for it."

To this plaintiff replied, October 8, 1885 :

" Will say to you that I will take the property as soon as I

can raise the money. Think I can in a few weeks. I talked with Mr. Hoyt yesterday. He told me he thought he could raise the money for me."

No contract seems to have been consummated between the parties up to this time.

The next containing anything is a part of a letter produced by plaintiff, which is dated November 10, 1885, and contains a part of a sentence written by defendant: "I hope you will take the property, and "—— The balance of the letter plaintiff testifies is lost. The matter continued thus until March 1, 1886, when defendant wrote:

"I expected to hear from you by this time, or see you. Do you think you will take the property? Please let me know, and oblige."

To this plaintiff replied that she would raise the money as soon as possible, by the forepart of April, she thought. He waited until May 10, 1886, when he wrote again:

"Is it expected that you will take the property soon? I must sell it, or raise some money on it, soon. If you cannot raise the whole I will take $2,000, and rent for the rest."

Plaintiff does not testify that she made any response to this letter; and May 14, 1886, defendant writes plaintiff's husband:

"I supposed until yesterday that the store at Schoolcraft was rented, when Mr. Robbins sent word to know if I would sell it to him."

He tells him that he is going home the next Monday to be gone two or three weeks; that he had sent word to Mr. Robbins that he would sell, or that he could talk to Mr. Francis about it; that he told him he thought the property could be bought for about $3,000 and payment down. The plaintiff replied to this that the store was already rented to good responsible parties, and that she thought it was better that it should remain as it was; that she would have the money in a few days.

On the seventeenth of May, 1886, defendant wrote to D. H. Francis:

"Your letter received, and all satisfactory. * * * So it is all right, and, when you can raise the money, I will take it. I shall be gone about two weeks. Let all stand as it is until I get back. Raynerstown is my address."

Up to this time it will be seen that no bargain had been concluded. While the terms had been agreed upon, still it was held in abeyance, and depending upon plaintiff's raising the $2,000 to be paid down. She was not in a position to perform, or ask performance. Plaintiff made her arrangements to raise the money by a loan upon the property from a Mr. Seaman, who resided in New York, through Judge Stearns, of Kalamazoo, and the money arrived for that purpose in Kalamazoo on the eighteenth day of May, 1886. Plaintiff thereupon wrote defendant before he left for New York, notifying him that the money was ready. He replied from Raynerstown, New York, May 21, 1886:

"Yours just received, and I am glad to hear of your success in raising the money. I need it very much. I shall be back the last of next week, or the forepart of the one following, and will let you know when I get there."

Plaintiff then wrote him that the money was here, and she would like to have a deed, and have the papers delivered, and returned back. He replied as follows:

"RAYNERSTOWN, NEW YORK, July 1, 1886.

"*Friend Francis:* Your letter received,—came to-day. In answer will say I will give you a deed of this date, July 1, 1886, and take the rent up to that date, take $2,000, and the two notes for the balance, and will attend to it just as soon as I get back, if satisfactory.

"Yours, etc., C. H. BARRY.

"And he ought to pay the rent now."

No written response was made to this letter, but the plaintiff let the matter rest, as requested by defendant. She arranged to hold the money so as to be able to carry out the

contract on her part. He did not return to Michigan as soon as he had expected. Plaintiff wrote him that the money was laying useless, and she regretted it, and defendant wrote her, under date of August 17, 1886 :

"I regret it all as much as anybody, for I have been and am paying 8 per cent. for the money, and much more at the bank, all the time. But I could not get back sooner. Will be there sure by Monday or Tuesday, and perhaps Saturday. Will let you know."

She wrote him again to know when he was coming up, and at what time he thought he would be here to arrange the matter; to which he replied, August 28, 1886:

"Your letter came last night, and I intended to go up on the morning train, but missed it. I have looked everywhere for the deed you gave me, but cannot find it, but can get the description there. Please have the papers made out, and then we can fix the business up quick. * * * I will not be up until Monday morning on the early train, and must go back on the noon."

Plaintiff, in accordance with this request, procured Mr. Stearns to prepare the papers, and had the deed and papers all prepared, and Mr. Barry came to Kalamazoo on the Monday, as he had appointed. On his arrival he ascertained that there was an undischarged mortgage upon the premises, and either at that time, or a few days later, he ascertained that the record did not show him to be the owner of the premises, but that the title of record was in his father. He insisted that he supposed that he was the owner, and stated that he must have a deed at home that had not been recorded, but he undertook to rectify the title. He did get the mortgage discharged of record, and directed his father to make a deed to plaintiff; but, on receiving offer of $3,000 from another party, he directed his father not to execute the deed to plaintiff, but to the other party. He received $1,500 of the purchase money from the purchaser, and took a mortgage for the balance running to him (the defendant).

We are of opinion that a complete and binding contract is plainly deducible from the letters, and that they contain all the essential terms requisite to comply with the statute (section 6181, How. Stat.) It appears that the minds of both parties met upon the same terms. The offer embraced in the letter of July 1, 1886, so far as it contained new propositions, appears to have been unconditionally accepted and acted upon by the plaintiff, although there does not appear to have been any express acceptance in writing. The notes and manner of payment are made sufficiently certain, by implication, by reference to the preceding letters. No parol testimony is necessary to be resorted to in order to supply the essential terms of the contract.

Concisely stated, the correspondence shows an offer by defendant to sell and convey to the plaintiff the property known as the "Schoolcraft-store Property," for $2,500,— $2,000 in cash on delivery of deed, and two notes amounting to $500, to be signed by plaintiff, and payable from the rents of the property sold, the rent accrued to July 1, the date which the deed was to bear, to be applied on the notes; and the acceptance of this offer by plaintiff is proved. This conclusion disposes of the second point raised by counsel for defendant.

Upon the first point raised, the writing contains a sufficient description to identify the property. The plaintiff had formerly owned the property, and had conveyed it to defendant's father, and defendant supposed that it had been conveyed to him, and plaintiff knew nothing to the contrary. Plaintiff's husband appears to have acted for defendant in renting the property, collecting the rent, and remitting it to defendant. And the description contained in the first correspondence as "the Schoolcraft Store," and referred to by defendant in the same way in his letter of May 14, 1886, is a sufficient designation to convey the property in a deed, and so described would convey the parcel of land upon which the

store stood, known, used, and occupied therewith. After having designed it in the correspondence as the "Schoolcraft Store," the subsequent correspondence conveyed a definite meaning when it referred to it as "the property." Both parties understood what property was meant, and so would a stranger to the parties, and to the property, fully comprehend that the term "property" referred to and meant the Schoolcraft-store property.

The third point must be overruled. We hold, as a legal conclusion from the undisputed fact, there was a contract as alleged, and the court should so have charged the jury. But, the jury having found a verdict for the plaintiff, the defendant was not prejudiced by the error of the court.

The fourth point is overruled.

The fifth point refers to the ruling of the court upon the admission of testimony. There are 16 errors assigned upon rulings of this kind. Two of them relate to testimony which the court admitted relative to the item of $60 interest which plaintiff paid for the use of the money she had arranged for, and which was held for her awaiting defendant's action, and the items of expense which plaintiff incurred in repairs upon the store while she was in possession, and in the expectation of obtaining the legal title, in accordance with her contract. The error, if any was committed, in admitting this testimony (which we do not decide), was corrected by the court in his charge to the jury. He instructed them that plaintiff could not recover for these items, and the amount of the verdict which the jury returned shows that they obeyed the instruction of the court in that respect.

The other errors assigned upon the admission of testimony are overruled; and, perceiving no error whatever in the errors assigned upon the record, the judgment is affirmed.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred.