CORONET DEVELOPMENT COMPANY *v.* F.S.W., INC.

Opinion of the Court.

1. Torts—Interference with Contract—Privilege.

Widow who was the beneficiary of the will of her husband, owner of a corporation the sole asset of which was land in Michigan, had a clear legal right to protect her interest in the sale of an asset of her husband's estate, and hence, is not guilty of the tort of interference with contractual relations of another in blocking the sale of real property owned by the corporation or the corporate stock to plaintiff, pursuant to an alleged oral agreement between the plaintiff and executors of her husband's estate, where a third party had made a better offer for purchase of the stock, in order to gain control of the land, and sale to the third party was approved by a probate court.

2. Judgment—Summary Judgment—Fact Issues.

Effectuating the purpose of the rule authorizing summary judgment often presents a difficult and delicate exercise of judicial acuity, because the judge must avoid making a finding on controverted fact issues, and at the same time analyze everything properly before him to determine whether any genuine issue of material fact is raised (GCR 1963, 117).

---

References for Points in Headnotes

[1] 52 Am Jur, Torts § 42; 30 Am Jur, Interference § 33.
   Liability for procuring breach of contract. 84 ALR 43, 26 ALR2d 1227.
[2] 41 Am Jur, Pleading § 336 *et seq.*
[3, 6] 30 Am Jur, Interference § 33.
[4] 37 Am Jur, Motions, Rules and Orders § 16 *et seq.*
[5] 23 Am Jur 2d, Depositions and Discovery § 3 *et seq.*
[7] 16 Am Jur 2d, Conspiracy § 44.
[8, 9] 56 Am Jur, Venue § 8 *et seq.*; 20 Am Jur, Courts § 121 *et seq.*
[10, 11] 41 Am Jur, Pleading § 339.

3. FRAUDS, STATUTE OF—PART PERFORMANCE—PRELIMINARY SURVEY.

Accelerated judgment dismissing count of complaint for breach of oral contract to convey land *held*, properly granted in case where the acts claimed by the plaintiff to be part performance taking the case out of the statute of frauds were expenditures of an investigative nature made by plaintiff to determine whether it wished to exercise its claimed oral option to purchase land, and consisted of spending $800 for a preliminary survey, and the buying of meals for surveyors and potential purchasers, and the act of possession relied upon was entry upon the land to undertake the survey (CL 1948 §§ 566.108, 566.110; GCR 1963, 116).

4. MOTIONS—PRACTICE—DISPOSITION—DENIAL.

Specific disposition of pending motions to compel answers to interrogatories from out-of-state defendants as parties, or alternatively to enter a default judgment against such defendants, is the preferable practice, by denial, either in advance of, or simultaneously with, granting of a motion for accelerated judgment against the plaintiff and in favor of the same defendants on jurisdictional grounds, but the omission of the trial judge to rule specifically on such motions requires the conclusion that he denied them (GCR 1963, 116.6, 313).

5. SAME—AFFIDAVITS—UNAVAILABLE PARTIES—DISCRETION OF COURT.

Granting of a motion to compel answers from out-of-state defendants as parties, or alternatively to enter a default judgment against such parties, made on the ground that answers were necessary to enable plaintiffs to establish their basis for jurisdiction under extended service statute, in opposition to motion by defendants for accelerated judgment for lack of jurisdiction, required the exercise of judicial discretion, and appellate review must be addressed to an abuse of discretion (CLS 1961, § 600.705; GCR 1963, 116, 313).

6. TORTS—INDUCING BREACH OF CONTRACT—STATUTE OF FRAUDS.

Inducing the breach of a contract, even though the contract be unenforceable under the statute of frauds, is an actionable tort (CL 1948, §§ 566.108, 566.110).

7. CONSPIRACY—INDUCING BREACH OF CONTRACT—DAMAGES.

The gravamen of the tort of conspiracy to induce breach of contract is not the conspiracy but the wrongful act causing damage.

8. SAME—INDUCING BREACH OF CONTRACT.

Count of complaint for conspiracy to induce corporation to breach its oral contract to convey lands to plaintiff, alleging various

acts of defendants in furtherance of conspiracy in another State, *held*, not to allege any illegal act occurring in Michigan.

9. SAME—LIMITED JURISDICTION—CORPORATIONS—INDUCING BREACH OF CONTRACT.

Plaintiff who attempted to establish jurisdiction of court over defendants from out of State, based on complaint of conspiracy to induce corporation to breach its contract with plaintiff, *held*, to have failed to establish limited jurisdiction in case where no pleaded illegal act of inducing breach of contract occurred in Michigan (CLS 1961, § 600.705).

DISSENTING OPINION.

BLACK, T. M. KAVANAGH, and SOURIS, JJ.

10. MOTIONS—SUMMARY JUDGMENT—CONSTITUTIONAL LAW.

*Decision by trial judge on motion for summary judgment that a presented issue of fact is unbelievable, and hence, not genuine, deprives the party against whom the motion is directed of his constitutional right to trial by jury (Const 1963, art 1, § 14; GCR 1963, 117).*

11. SAME—SUMMARY JUDGMENT—ISSUES OF FACT.

*Issues of fact held, presented which, if tried according to historical practice and constitutional right, would control one way or the other most if not all of legal questions presented on motion by defendants for summary and accelerated judgments in action by plaintiff against defendants from out of State who are alleged to have conspired to induce a corporation to breach its oral contract to convey lands in Michigan to plaintiff; hence, summary and accelerated judgments were improperly entered by trial court (Const 1963, art 1, § 14; CLS 1961, § 600.705; GCR 1963, 116, 117).*

Appeal from Court of Appeals, Division 2, Lesinski, C. J., T. G. Kavanagh and Quinn, JJ., affirming Livingston, Carland (Michael), J. Submitted March 9, 1967. (Calendar No. 13, Docket No. 51,511.) Decided June 6, 1967. Rehearing denied July 21, 1967.

3 Mich App 364, affirmed.

Complaint by Coronet Development Company, a Michigan corporation, Robert G. Elliott, Francis E.

Webb, and Albert Boucher, Jr., against F. S. W., Inc., a Louisiana corporation, Leon Godchaux, Paul Godchaux, Jr., Mrs. Fred S. Weis, Ralph Banfield, and Leon Godchaux and Paul Godchaux, Jr., as executors of the succession of Fred S. Weis, for specific performance of an agreement to convey land or alternate relief, and for damages arising from alleged conspiracy by all defendants except F.S.W., Inc. to cause F.S.W., Inc. to breach its contract to convey land. Summary and accelerated judgments for defendants, except defendant Banfield. Judgments affirmed by Court of Appeals. Plaintiff corporation appeals. Affirmed.

*MacLean, Seaman & Laing,* for plaintiff Coronet Development Company.

*Reymont Paul* and *Wilfred H. Erwin,* for defendant F.S.W., Inc.

*Dykema, Wheat, Spencer, Goodnow & Trigg (James H. Spencer,* of counsel), for defendants Godchaux.

*Robert J. Kelly,* for defendant Mrs. Fred S. Weis.

O'HARA, J. Leave was granted in this case to review a Court of Appeals[1] affirmation of a circuit court entry of summary judgment as to all defendants except Ralph Banfield. Plaintiff is the appellant here.

The controversy arises out of claimed offers and alleged acceptances of offers to purchase realty in Livingston county, Michigan. All of the purported contractual commitments were oral and on their

---

[1] 3 Mich App 364,—REPORTER.

face were void under the statute of frauds.[2]  Appellant denies the statute controls.

Coronet Development Company is a Michigan corporation.

F.S.W., Inc., is a Louisiana corporation, apparently named for its incorporator F. S. Weis.  Mrs. Fred Weis is his widow.  By her husband's will she is the controlling stockholder in F.S.W., Inc.  She is a resident of Louisiana.  Paul Godchaux, Jr., and Leon Godchaux are individuals, corporate officers of Weis, Inc., and executors of the Succession of Mr. Weis.[3]  They are residents of Louisiana.  Ralph Banfield is a resident of Livingston county, Michigan.

The long and short of the claims of the parties may be thus summarized.  The organizers of Coronet learned of the defendant corporation's ownership of land in Livingston county which they deemed desirable for purchase for subdividing.  Originally in person, and later by attorney, they offered $175,000 for the property.  According to them the offer was orally accepted by the Godchaux acting for the corporation.  No written acceptance was ever executed.  Plaintiff claims that this was not done at the behest of defendants because of claimed Federal tax advantage to them and that they were assured by defendants the agreement would be fully as binding as though written as required by statute.  Plaintiff assigns this reason, as well as alleged part performance, to take the case out of the statute.  After the claimed oral acceptance the plaintiffs contend that the Godchaux, acting now, not as corporate officers, but as fiduciaries of the deceased Mr. Weis' estate, advised them that the civil district court of the parish of Orleans, Louisiana, "in the

[2] CL 1948, §§ 566.108, 566.110 (Stat Ann 1953 Rev §§ 26.908, 26.910).

[3] Executors of the estate of F. S. Weis in Michigan terminology.

succession proceedings would not authorize them to transfer the corporate stock. Neither could they execute a deed to the concerned property without such authorization. Coronet's attorneys went to New Orleans and appeared before the judge of the civil court to seek the requisite authority. Meanwhile, there had been another offer of $210,000 made for the property. This offer was cash. The $175,000 offer originally made was for a $55,000 down payment and the balance on terms. Plaintiff then increased its offer to $211,000 but with the same down payment. The court in New Orleans heard the parties, examined the Godchaux and elicited from them the answer that in their best judgment a cash offer of $210,000 was more advantageous to the estate than the $211,000 offer on terms. Plaintiff carefully and repeatedly made clear in the Louisiana court that it was making its new offer without, in any manner, waiving any rights which might have accrued under the original oral offer and alleged acceptance. The Louisiana court authorized the sale for cash and it was consummated.

Plaintiff then instituted this suit against all the New Orleans residents under the "longarm service" statute.[4] Service was obtained on them in Louisiana. It is conceded these defendants were never in the State of Michigan, and as to the corporation that it was not admitted to do business in this State. Its sole connection with this State was its ownership of the realty here involved, except for the claim that a "tenant farmer" occupied part of the land. Defendant Banfield was personally served in Michigan. The circuit judge granted summary judgment as to all defendants except Banfield. As to him the motions were denied.

---

[4] CLS 1961, § 600.705 (Stat Ann 1962 Rev § 27A.705).

Count 1 of plaintiff's complaint seeks specific performance of the alleged contract either by execution of a deed to the involved property or by transfer of defendant corporation's stock. Alternatively a money judgment in tort is asked in count 2.

The tort relied upon by plaintiffs to establish limited jurisdiction in Michigan, thus permitting extended service, is characterized by them as "causing a third person not to perform its contract with appellant." In substance, it is their claim that Mrs. Weis, the Godchaux, and defendant Banfield conspired to induce F.S.W., Inc. to breach its claimed oral contract with Coronet, Inc.

Defendants, moving for accelerated judgment, claimed:

(1) The contract for the sale of the land was absolutely void under the statute of frauds.

(2) The alleged part performance was totally insufficient to take it out of the statute.

(3) The requirements of the statute to give Michigan limited personal jurisdiction over the out-of-State defendants were not alleged and that there was no "doing or causing any act to be done, or consequences to occur, in the State resulting in an action for tort" and in consequence the court had no jurisdiction over the Louisiana defendants not served in Michigan.

The learned trial judge, in a considered and detailed opinion, granted summary judgment as to Mrs. Weis on the theory that irrespective of what she may have done to block the sale of the property, she had a clear legal right to protect her interest in the sale of an asset of her husband's estate, of which she was the beneficiary. He held as to her complicity in the alleged conspiracy that the gravamen of the action is not the conspiracy but the wrongful acts causing the damages. He reasoned that

Mrs. Weis had a legal right to see that the asset (whether the stock in F.S.W., Inc., or the realty itself owned by the corporation) bring the highest possible return and hence, that as to her there was no wrongful act. He based his holding on *Roche v. Blair,* 305 Mich 608, 613. We agree for the reasons stated and on the authority cited. Her posture in this litigation is distinguishable from any of the other defendants. For this reason we deal with the disposition as to her out of the order in which the issues were pleaded.

We turn now to count 1 and the claim of plaintiff that the contract for sale of the realty was not void under the statute of frauds, *supra.*

On the basis of the pleadings, affidavits, counter-affidavits, depositions, interrogatories and the answers thereto, the trial court found there was not that measure of part performance which would take the case out of the statute. Effectuating the purpose of the rule authorizing summary judgment often presents a difficult and delicate exercise of judicial acuity. The judge must assiduously avoid making a finding on controverted fact issues. At the same time he must analyze everything properly before him to determine whether any genuine issue of material fact is raised. The line of demarcation is one of the most elusive in procedural law. In this case the trial judge located it and observed it punctiliously.

The support for the claim of part performance after challenge by affidavit had to be found in the deposition of Mr. Elliott, the person who actually did those specific things relied upon. The trial judge made no finding of fact as to what the deponent did or did not do. Rather he accepted as done everything Mr. Elliott claimed to have done. Thereupon, he assessed it on the basis of the legal test applicable thereto. Mr. Elliott deposed specifically that he ex-

pended $800[5] in survey charges; that he bought
meals for surveyors and potential purchasers; that
the act of possession relied upon was entry upon the
land to undertake the survey. Significantly, Mr.
Elliott in response to an inquiry by counsel for ap-
pellee, said:

"The agreement was to survey the land and take
whatever information I needed to satisfy myself
*I wanted to transact the deal.*" (Emphasis sup-
plied.)

A careful examination of the whole deposition
fails to reveal any specific item of expenditure in
money other than the aforementioned $800. The
deponent alleged other expenditures in general terms
and claimed "I spent a lot of time."

The trial judge, in his opinion, held:

"Here there is no showing of any part performance
under the contract. The very most that can be
said is that the plaintiff made certain expenditures
of an investigative nature in order that it might
determine whether or not it wanted to exercise its
claimed option."

As to count 1 we are constrained to agree with
the trial judge and the Court of Appeals. The
motion for accelerated judgment was properly
granted.

Count 2 is somewhat more complex. In this count
plaintiff alleges a conspiracy, as hereinbefore noted,
among the Godchaux, Mrs. Weis, resident defendant
Banfield and alleged agents within Michigan to
induce the breach of the asserted contract. We have
heretofore disposed of Mrs. Weis' claimed participa-
tion and we address ourselves now to the allegations,
supporting affidavits, counteraffidavits and deposi-
tions forming the basis for the motion for a sum-

_____

[5] Ten percent of an $8,000 charge for a complete survey.

mary judgment as to the other nonresident defendants. It is the theory of plaintiffs that subdivision 2 of the extended service statute, *infra,* which premises jurisdiction upon the doing or causing any act to be done or consequences to occur in this State resulting in an action for tort was met by their pleadings and supporting documents.

Additionally, however, they claim, assuming *arguendo* that the trial court on the basis of the state of the pleadings and supporting documents properly granted the summary and accelerated judgments, reversible error was committed in so ruling because there were pending before him at that time motions under GCR 1963, 116.6.[6] These motions were to compel answers to interrogatories or alternatively for an order of default for failure to answer pursuant to GCR 1963, 313.4. The interrogatories are claimed by appellants to be relevant to the jurisdictional question. No objections to the interrogatories were filed pursuant to GCR 1963, 309.3.

Defendants counter with the argument that the interrogatories were not relevant to the question of jurisdiction. They contend further that the testimony sought was from the named defendants as *parties to the litigation.* They argue that to compel answers by the defendants as parties would, in legal effect, be deciding adversely to them their pending motion for accelerated judgment on the jurisdictional ground. They rely upon *Hilton* v. *W. T. Grant Company* (WD Pa 1962), 212 F Supp 126, 130, holding

---

6 "When Affidavits are Unavailable. Either party may state in his affidavit that he cannot present the material facts essential to justify his position because such facts are known only to persons whose affidavits he cannot procure.

"The affidavit shall name such persons and state why their testimony cannot be procured, together with a belief and reasons therefor as to the nature of their probable testimony. Thereupon the court may make such order as may be just, either denying the motion or ordering a continuance to permit the affidavit to be supported by further affidavits to be obtained, or depositions to be taken, or answers to interrogatories to be furnished, or discovery to be had."

"that the burdens incident to the status of a defendant ought not to be augmented until it is certain that the party involved really is properly a defendant."

Thus is posed the dilemma under the rule. The plaintiffs contend they cannot establish their basis for jurisdiction without cross-examination of the named parties. The defendants counter with the proposition that persons cannot be made to respond as parties to litigation in a court which had no jurisdiction over them.

The omission of the trial judge to rule specifically on the pending motion to compel answers from outstate defendants as parties, or alternatively to enter a default judgment, requires us to conclude that he denied them. This, of course, for the reason that he decided the basic jurisdictional question in defendants' favor. We, as the Court of Appeals did, take the motions as denied. We suggest a specific disposition of those motions would have been preferable, by denial, either in advance of, or simultaneously with, the motion for accelerated judgment on the jurisdictional ground.

Since the rule (hereinbefore footnoted) is cast in such form as to invoke an exercise of judicial discretion, *i.e.,* "the court *may* make such order as *may* be just," review must be addressed to an abuse of discretion rather than to an assessment of which of the 2 rules should prevail in case of conflict between them.

The *ratio decidendi* of the trial court's conclusion is clearly discernible throughout his opinion. It holds, in effect, if plaintiff proved everything it pleaded, plus everything it contends it could prove if defendants were compelled to answer interrogatories, it still could not establish Michigan jurisdiction over the extraterritorially served defendants.

In its most distilled form the trial judge's opinion may be thus expressed:

"They [defendants] are alleged to have conspired but no act showing such conspiracy is alleged. *No wrongful act is set forth.*" (Emphasis supplied.)

The same can be said with equal application to the proof sought to be elicited by the interrogatories.

We are not unmindful of the strongly urged contention of plaintiff that the inducing of the breach of a contract, even though the contract be unenforceable under the statute of frauds, is actionable. With the proposition in general terms we have no disagreement. The authorities cited in support thereof sustain it. What we think plaintiff cannot overcome is the lack of a wrongful act as the gravamen of the conspiracy. It is the act of *conspiring to induce the breach* upon which plaintiff must rely to supply limited Michigan jurisdiction.

The very best or worst that can be said of what all parties here are alleged to have done is conspire to do what they had to do under the law of the State of Louisiana, *i.e.*, obtain authorization to perform their contract to deed the land or sell the stock. It is admitted they could not have performed the contract with legal efficacy without the approval of the Louisiana court. As the trial court observed "defendants considered themselves morally bound by the agreement to sell for $175,000," but this moral obligation was, under these circumstances, cool comfort. The irreducible fact is plaintiff entered into negotiations for the purchase of land with fiduciaries who were limited in performance to the extent the court which appointed them would ratify or confirm their acts. When that court refused to approve acceptance of plaintiff's offer, there was nothing the fiduciaries

as such could do. Any act of performance not judicially approved would have been a legal nullity.

Plaintiff, however, additionally seeks redress against them as individuals and as corporate officers with at least "color" of authority. Be that as it may, if such redress lies, it lies in a court which can exercise jurisdiction over the person and subject matter of such litigation. It should be carefully noted that we express no opinion in this regard.

The tort plaintiff relies on is a *conspiracy to induce breach*. As we noted with approval earlier herein, the gravamen of that tort is not the conspiracy but the illegal act. We, like the trial judge and the Court of Appeals, can find no pleaded illegal act occurring in Michigan.

For the reasons herein set forth the judgment of the Court of Appeals is affirmed. Costs to the defendants.

DETHMERS, C. J., and KELLY, ADAMS, and BRENNAN, JJ., concurred with O'HARA, J.

BLACK, J. *(dissenting)*. It requires no legally clued sleuth to discern, upon the face of the Court's instant opinion for affirmance, that several issues of fact are presented which, if tried according to historic practice and constitutional right, would control one way or the other most if not all of the legal questions decided this day; the question of jurisdiction under RJA § 705 (1) (2) (3)[1] specifically included. That new and insidious qualifier "genuine," manifestly now, has greased the way to encouragement and then affirmance of accelerated or summary judgments on strength of judicial determination that a given issue of fact just isn't "genuine" — sort of spurious, I apprehend — and that

[1] CLS 1961, § 600.705 (Stat Ann 1962 Rev § 27A.705).—REPORTER.

judgment may be entered on the basis of such a determination regardless of the actual presence of such an issue.[2]

Sure, the presented issue of fact may be unbelievable to the scrutinizing trial or appellate judge. But to say so on summary motion just isn't his function if Const 1963, art 1, § 14 is to be upheld by the primary guardians thereof. The judge may not, even in the Federal system from whence came the aforesaid qualifier, decide questions of credibility. See discussion of this point in the two *Durant Cases (Durant* v. *Stahlin* [*Appeal in re King, Bashara, Merrell, and Waldron*], 374 Mich 82, 88–90; *Durant* v. *Stahlin* [*Appeal in re Van Dusen, Elliott, Romney*], 375 Mich 628, 644–656), citing *Poller* v. *Columbia Broadcasting System, Inc.* (1962), 368 US 464 (82 S Ct 486, 7 L ed 2d 458); *Sartor* v. *Arkansas Natural Gas Corporation* (1944), 321 US 620 (64 S Ct 724, 88 L ed 967); and *Sonnentheil* v. *Christian Moerlein Brewing Company* (1899), 172 US 401 (19 S Ct 233, 43 L ed 492).

Two sentences, italicized within this complete paragraph of the Court's opinion for affirmance, prove the point (*ante* at 309):

"On the basis of the pleadings, affidavits, counter-affidavits, depositions, interrogatories and the answers thereto, the trial court found there was not that measure of part performance which would take the case out of the statute. Effectuating the purpose of the rule authorizing summary judgment often presents a difficult and delicate exercise of judicial

---

[2] Note that the word "genuine," appearing now in GCR 1963, 117, was present nowhere in any previous summary judgment rule of this Court. See the official Revision of 1931 Michigan Court Rules, Rule 30, pp 55–59, and 1945 Court Rule 30, Honigman, Michigan Court Rules Annotated, pp 299, 300, 301. It is noteworthy that the jurisprudence of Michigan got along very well without these extreme new methods of fast and easy judgment, from the very beginning 117 years ago (Const 1850, art 6, § 5) and up to January 1, 1963.

acuity. The judge must assiduously avoid making a finding on controverted fact issues. *At the same time he must analyze everything properly before him to determine whether any genuine issue of material fact is raised. The line of demarcation is one of the most elusive in procedural law.* In this case the trial judge located it and observed it punctiliously." (Emphasis supplied.)

Just before the theretofore adopted General Court Rules of 1963 went into effect five members of this Court contributed grimly their view that summary disposition of cases on summary motion should never be permitted to trench upon one's supposedly steadfast and constantly assured right to a full day in court and upon one's constitutionally provided right of trial by jury. *Romero* v. *King,* 368 Mich 45, 49, 50:

"With the arrival of this appeal there remains but little doubt that our fancy new rules of peremptory practice are being regularly employed—subtly and effectively—to circumvent the revered and hitherto guaranteed right to have presented issues of fact tried to and decided by juries. For attestation of such right, as it was in the beginning, is now, but—if current sly schemers do have their way— will never hence be, see United States Const, Am 7; Mich Const (1850), art 6, § 27; Mich Const (1908), art 2, § 13 (duplicating the 1850 guaranty); *Underwood* v. *People,* 32 Mich 1 (20 Am Rep 633); *Swart* v. *Kimball,* 43 Mich 443; *Paul* v. *Detroit,* 32 Mich 108; *Risser* v. *Hoyt,* 53 Mich 185."

I would reverse and remand for entry of order denying the respective summary motions that were granted below, and would award plaintiff costs of both appellate courts.

T. M. Kavanagh and Souris, JJ., concurred with Black, J.