HEWETT GRAIN & PROVISION CO. *v.* SPEAR.

1. FRAUDS, STATUTE OF—CONTRACTS—ACCEPTANCE.
    In an action by the seller on a contract for the sale of a car load of potatoes, where the evidence shows that the buyer refused to accept them because the railroad company refused to allow an inspection, and the seller then authorized inspection, after which the buyer rejected the shipment, there was no such legal acceptance as to render the statute of frauds inapplicable.

2. SAME—MEMORANDUM OF CONTRACT MUST BE SUFFICIENT WITHOUT PAROL PROOF.
    The statute of frauds (3 Comp. Laws 1915, § 11835) is a rule of evidence wholly excluding parol evidence and requiring a note or memorandum signed by the party to be charged, either within itself sufficient or made so by reference to other writings so clearly adopted by the party to be charged as to render parol proof of what the contract really was unnecessary.

3. SAME—CORRESPONDENCE—CONTRACTS—VALIDITY.

 Correspondence between the seller of a car load of potatoes and the buyer, *held*, insufficient to establish a valid contract under the statute of frauds.

Error to Delta; Flannigan (Richard C.), J. Submitted January 18, 1923. (Docket No. 33.) Decided April 27, 1923.

Assumpsit by the Hewett Grain & Provision Company against Frank B. Spear and others, copartners as F. B. Spear & Sons, for goods sold and delivered. Judgment for defendants *non obstante veredicto.* Plaintiff brings error. Affirmed.

*Ryall & Frost,* for appellant.

*Berg, Clancey & Randall,* for appellees.

WIEST, C. J. The sole question in this case is whether the evidence of sale of a car load of potatoes satisfies the statute of frauds. Defendants are copartners, engaged in business at Marquette, and plaintiff is located at Escanaba. Defendants asked plaintiff, by telephone, if it could furnish them with potatoes and were advised that a car load in transit could be diverted to them at Marquette. The learned circuit judge, in entering judgment for defendants notwithstanding the verdict in favor of plaintiff, so well covered the questions involved that we quote freely therefrom:

 "The plaintiff purchased in Minnesota from Geo. B. Higgins & Co. a car load of potatoes. They were shipped in a car initialed A. T. S. F. and numbered 8644, to Escanaba, Michigan, under billing to Higgins & Co. but for delivery to the plaintiff, upon taking up the bill of lading. The plaintiff's claim is that before the car arrived at Escanaba they sold the contents to the defendants and thereupon diverted the car, en route, to Marquette, Michigan, where the defend-

ants are engaged in business.    Upon the arrival of
the car at Marquette the potatoes were refused by
the defendants.    Their claim is they bargained for
seed potatoes, for distribution at cost, for wartime
planting, and that the potatoes which the plaintiff
offered to deliver were wholly unsuited for the pur-
pose.    Upon the refusal of the defendants to accept
the potatoes the plaintiff ordered the car forwarded
to Escanaba where, upon its arrival, the potatoes
were unloaded and sold by the plaintiff.

"It has long been settled that, to satisfy the statute,
the essentials of the contract need not be set forth
in a single writing over the signature of the party
to be charged.    A contract sufficient to satisfy the
statute may be found from letters or other writings
part of which only are signed by the party to be
charged, provided the writing not signed by him is
clearly recognized, identified and adopted in the writ-
ing signed by him, and provided further that the
essentials of the contract may be definitely collected
from the writings when they are brought together.

"This doctrine is ancient and simple and amounts
to no more or less than this: That a proposition con-
taining the essential elements of a contract, definitely
presented in writing and definitely accepted in writ-
ing, constitutes a contract binding on the party so
accepting.    But, in the promulgation and application
of the rule that various writings may be examined
in search of a memorandum sufficient to satisfy the
statute, no disposition will be found on the part of the
courts, to accept anything less than full and definite
assurance from the face of the writings themselves,
unaided by parol, that the party to be charged obli-
gated himself over his own signature, to the contract
claimed.    To that end it is essential the writing
signed by the party to be charged contains a clear
reference to such other writings as are presented, and
as are necessary to establish the alleged contract.
The writings signed by the party to be charged must
so identify such other writings as to make of their
contents a part of the writings signed by him.    See
*Francis* v. *Barry*, 69 Mich. 313; *Paul* v. *Graham*, 193
Mich. 447; *Graham* v. *Elevator Co.*, 60 Ind. App. 697
(111 N. E. 332).

"'The test must be whether, laying the writings side by side, and without any parol aid or explanation whatsoever, the court can find that the party to be charged, signed his name to the terms of the alleged contract, with the same degree of certainty and assurance it could so find, was the undertaking of the party contained in a single writing.  Applying this test to the writings in this case and a memorandum adequate to take the transaction out of the statute cannot, in the opinion of the court, be found.

"The letters and writings relied on by the plaintiff to establish the contract sued upon, are as follows: May 26, 1917.  Hewett to Spear.  Letter:

"'Confirming our phone conversation today, we have entered your order for one car load of potatoes to be shipped to you at Marquette at $3.25 delivered.

"'The car will be made up of assortments as follows:

"'About 50 bags Round Whites,
"      50 bags Early Ohios,
"      50 bags Burbanks,
"      70 bags Kings.

"'This is the only car we know of in Minnesota for sale and we have had the destination of this car changed to Marquette, Michigan, and we will give you the car number and initials the fore part of the week as soon as we receive same from our loader.

"'We have a good supply of Early Ohios as well as Minnesota stock at Escanaba in case you should need any more for immediate shipment.  The stock is moving very fast as farmers in our locality are coming in very fast today and buying seed stock in large amounts.  We thank you for this business and hope to hear from you when again in the market.'

"May 29, 1917.  Hewett to Spear.  Letter:

"'We are enclosing herewith invoice covering ATSF car No. 8644 car of Minnesota potatoes shipped on the 28th.  This car should reach you within the next few days.

"'These average 2½ bushel to the sack.

"'In case you should need any Early Ohio potatoes, we have some in stock at Escanaba in which we are getting $3.60 per bu.  We would make you a special price on a limited quantity of $3.45 for these early Ohios f. o. b. Escanaba, in case you should have any call for them.'"

"The invoice referred to in the foregoing letter is dated May 28, 1917, and reads:

"'Sold to F. B. Spear & Son, Marquette, Mich., F. O. B. Cars. Initial ATSF Car No. 8644.

| "'Articles | Weight | Price | Amount. |
|---|---|---|---|
| 214 Sacks Minnesota | | | |
| Round White ......525 bu.......$3.25......$1738.75 | | | |
| Sacks ..............214.......... .10...... 21.40 | | | |

$1760.15.'

"May 31, 1917.   Hewett to Spear.   Letter:

"'We took up the bill of lading at our bank today covering ATSF car No. 8644 car of potatoes shipped to Marquette from Minneapolis, Minn.   This car is billed to the order of George B. Higgins & Co., notify the Hewett Grain & Provision Co., Marquette, Mich.   Wish you would be on the lookout for this car as we are not certain over which road it will arrive at Marquette.   We have today drawn another draft on you with the bill of lading attached to cover this car.'

"June 1, 1917.   Spear to Hewett.   Letter:

"'We have your letter advising that you shipped the potatoes under bill of lading.   We will not accept goods shipped under bill of lading, we must have open billing.

"'In any event you should not have made the draft on us for full amount as you owe us $158.00 on invoice of April 9th. Will you please let us have your check for this amount.'

"June 2, 1917.   Spear to Hewett.   Telegram:

"'Potatoes here billed Higgins Railway refuses allow inspection.   We refuse car.'

"June 2, 1917.   Hewett to Spear.   Letter:

"'We are enclosing herewith letter giving agent of Railroad Co., authority to allow you to inspect ATSF car 8644.'

"June 29, 1917.   Spear to Hewett.   Letter:

"'Your bill is long past due which your Mr. Hewett promised when here to send us a check as soon as he got home.   We cannot allow the $40.82 freight on the car of potatoes as he positively stated he would not off set any claim which he might have against the. amount then due us and then past due.   If

we do not hear from you by return mail, will make draft on you for the full amount of our account and shall expect you to pay same.'

"Overlooking the discrepancy between the letters relating to the car numbers, and between the letter and invoice relating to the car initials, the letters of May 29th and 31st related to the same car A. T. S. F. number 8644, which, for brevity, may be referred to as the Higgins' car.   But there is no reference in either of these letters to the letter of May 26th, nor in the letter of May 26th to the Higgins' car.

"The letter of May 26th related to a car load of potatoes to be inferentially forwarded from Minnesota, but in a car which was in no manner identified by initials, number, or otherwise, and, speaking from the face of the letters, which must control here, they did not relate to the same, but to different transactions; not to the same car load of potatoes but to two car loads of potatoes.   The letter of May 26th had reference to a car load of potatoes to be made up of about 50 bags of 'Round Whites,' 50 bags of 'Early Ohios,' 50 bags of 'Burbanks,' and 70 bags of 'Kings,' while the proposition of the letter of May 29th and the invoice that accompanied it, was for the sale of 214 sacks of 'Minnesota Round Whites,' and for the sale also of 214 containers or sacks.   It is undeniable that a third party, upon reading these letters and the invoice would, in the absence of oral explanation, at once conclude there were two transactions, the subject-matter of one being a car load of potatoes to consist of about 50 bags of a variety known as 'Round Whites' and 170 bags of other varieties, at $3.25 a bushel or bag including the bags, and the subject-matter of the other transaction being 214 sacks of potatoes of a single variety known as 'Minnesota Round Whites,' at $3.25 a bushel or sack, and 214 sacks at 10 cents each.

"To entitle the court to inspect the Hewett letters, or either of them, in connection with the Spear letter of June 1st, in search of a contract in writing on the part of the defendants to purchase the potatoes described in either of the Hewett letters, it must first appear, and in writing over his signature, that the Hewett letters were received by Spear.   It is not

enough to show by parol they were mailed to him, or even by parol they were actually received by him. Their receipt by him must be found in his letter, either by express admission, or by necessary implication from the language of this letter. Unless this rule is strictly applied defeat of the statute would be a simple matter, and would often result where it is sought to establish a contract in writing by letters sent and received.

"That the Spear letter of June 1st does not refer to, and that it contains no language whereby it might, by implication, be connected with the Hewett letter of May 26th, or with his letter of May 29th, is unquestionable and unquestioned. Therefore, as an aid in the search for a contract in writing based in part on the Spear letter of June 1st the Hewett letters of May 26th and May 29th, must be eliminated.

"It is argued the Spear letter, which states: 'We have your letter advising that you shipped the potatoes under bill of lading,' could have had reference only to the Hewett letter of May 31st which concludes: 'We have today drawn another draft on you with bill of lading attached to cover this car.' On the contrary, this quotation from the Hewett letter adds emphasis to the position that on the face of the letters two transactions are indicated and that, without the aid of parol testimony, it cannot be ascertained to what car, to what shipment, or to what bill of lading, the Spear letter had reference. This letter speaks of 'another draft with bill of lading attached.' This language justifies the inference that there were two drafts and two bills of lading. It may be supposed there would not be two drafts, certainly not two bills of lading, for the same car.

"The Hewett letters present two propositions, one for the sale of about 220 bags of potatoes to consist of various specified varieties and the other for the sale of 214 sacks of potatoes of a single variety, and contain the suggestion that, to cover these transactions, two drafts and two bills of lading had been forwarded. The Spear letter does not single out either of the Hewett letters, or either of the Hewett propositions. It merely admits receipt of a letter concerning a shipment of potatoes, but whether of the

potatoes described in the Hewett letter of May 26th or in the Hewett letter of May 29th, or of potatoes not described in either of these letters, cannot be known without the aid of parol testimony; nor without the aid of parol testimony can it be known whether the bill of lading referred to in the Spear letter, was the bill of lading mentioned in the Hewett letter, or was another bill of lading of another car forwarded by the plaintiff from Minnesota, or out of its Escanaba stock.

"But, if the Spear letter had reference to the Hewett letter of May 31st a contract on the part of the defendants to purchase the potatoes in the Higgins car would not result. No invoice accompanied that letter and it neither specifies the subject matter or the terms of sale. It does not state the quantity or variety of the potatoes offered, or the price at which they are offered. Furthermore the Spear letter is a distinct refusal, not an acceptance, of the proposition of the letter (whichever letter it was) therein referred to.

"The Spear telegram of June 2d related to the Higgins' car. But it made no reference to any proposition, written or otherwise, received from the plaintiff and it was not an acceptance of a proposition of any sort, but a direct, positive refusal of the car.

"It was a sale to the defendants of the potatoes in the Higgins' car the plaintiff claimed and upon which claim it sued and recovered. Assuming the Hewett proposition for a sale of the potatoes in the Higgins' car was sufficient as to subject-matter and price, it was a proposition for the sale and delivery to the defendant, of the potatoes in that car on condition, that, without opportunity for inspection, of the shipment, they first paid the draft which was forwarded, presumably, through the banks, with the bill of lading attached. The proposition was to deliver the defendants the contents of the Higgins' car, said to be potatoes of a certain kind, provided the defendants, without right to examine the shipment to ascertain the quantity or the quality of the potatoes, would first pay the amount of the draft which the plaintiff sent forward with the bill of lading. Such advance payment was one of the terms of sale proposed by the plaintiff. Unless this term, as well as the price and

other terms of the offer, was accepted by the defendants, there could be no contract binding on either the plaintiff or defendants. The Hewett proposition that the defendants must pay the draft and take up the bill of lading, before being at liberty to look into the car to ascertain whether the quantity of potatoes represented to be there was there, and if they were, whether they were sound or rotten, was refused by Spear in and by both his letter and telegram. Consequently a contract binding on either the plaintiff or defendants, did not result.

"Following the receipt of the Spear telegram refusing the car, the plaintiff undertook to modify its proposition to the extent of allowing the defendants the right of inspection before payment of the draft and to that end they mailed Spear an order on the railroad to allow the inspection but to the proposition as thus modified, Spear made no response either by letter or telegram.

"That Hewett understood his proposition for a sale and delivery of the potatoes in the Higgins' car, upon payment of the draft and without right of inspection, was refused, is evidenced by his offer of modification. And that Spear accepted the proposition as modified, there is no claim and no room to claim. The only communication in writing, from Spear to Hewett, following the Spear telegram of June 2d refusing the car, is his letter to the plaintiff of June 29th. This letter was written long after the Higgins' car had been re-shipped to Escanaba and its contents removed and disposed of by the plaintiff. It speaks of a freight item of $40.82 on a car load of potatoes but whether on the Higgins' car, or on some other car, it is impossible from the letter, or from any other writing in the case, to tell. Nothing can be claimed for this letter.

"Clearly these writings, in and of themselves, do not show a contract in writing on the part of the defendants to purchase the Higgins' car, or any other car of potatoes from the plaintiff, and for that reason the verdict should have been directed."

We had occasion, in *Wagner-White Co.* v. *Co-operative Ass'n, ante,* 58, handed down March 22, 1923, to

pass upon the principal question here involved, and the opinion of the court, written by Mr. Justice Bird, supports the conclusion reached by the circuit judge in this case.

Plaintiff claims there was a legal acceptance of the potatoes and the statute of frauds does not apply. An examination of the record does not disclose an acceptance of the potatoes by defendants.    It is true defendants were given access to the car and examined the potatoes, but they rejected the shipment.    Having in mind the correspondence and the testimony relative to such claimed delivery we do not find an acceptance thereof by defendants.

The statute of frauds provides that:

"A contract to sell or a sale of any goods or choses in action of the value of one hundred dollars or upwards shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf." 3 Comp. Laws 1915, § 11835, subd. 1.

The note or memorandum mentioned in this statute is not, of course, the contract, but it is the only evidence by which a contract is to be proved.    The statute is a rule of evidence wholly excluding parol evidence and requiring a note or memorandum signed by the party to be charged, either within itself sufficient or made so by reference to other writings so clearly adopted by the party to be charged as to render parol proof of what the contract really was unnecessary. An examination of the record and authorities upon the subject leads us to agree with the circuit judge.

The judgment is affirmed, with costs to defendants.

Fellows, McDonald, Clark, Bird, Sharpe, Moore, and Steere, JJ., concurred.