NORTHERN PLUMBING & HEATING, INC. v HENDERSON
BROTHERS, INC.

Docket No. 77-201. Submitted December 6, 1977, at Grand Rapids.—
Decided May 8, 1978. Leave to appeal applied for.

Henderson Brothers, Inc. planned to bid as a general contractor
and requested sealed bids from prospective subcontractors to
use in its bid for construction contracts with the City of
Cheboygan on additions to the waste water treatment plant.
Northern Plumbing and Heating, Inc., was listed as a prospec-
tive subcontractor in Henderson's bid to the city. The city
signed a contract with Henderson as the general contractor,
but that contract listed Phoenix Contractors, Inc., as the sub-
contractor, in place of Northern. Northern then commenced an
action against Henderson and Phoenix alleging that it had a
contract with Henderson based on custom in the trade and that
Phoenix committed three distinct torts: (1) a conspiracy to
breach a contract between Northern and Henderson, (2) tor-
tious interference with an existing contract, and (3) tortious
interference with an advantageous business relationship. De-
fendant Phoenix was granted summary judgment, Kent Circuit
Court, George R. Cook, J. Plaintiff appeals. *Held:*

Summary judgment on the basis that there was no issue of
fact was improper where the depositions of the opposing parties
raised a material issue of fact which should be decided by the
trier of fact. The statute of frauds is not a bar to actions for
tortious interference with an existing contract and tortious
interference with an advantageous business relationship.

Reversed and remanded.

DANHOF, C. J., dissented:

The trial court's grant of summary judgment on the grounds

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 73 Am Jur 2d, Summary Judgment § 26.
[4] 73 Am Jur 2d, Summary Judgment § 5.
[5, 6, 8, 10, 14] 45 Am Jur 2d, Interference § 9.
[7] 45 Am Jur 2d, Interference §§ 7, 27.
[9, 13, 15] 45 Am Jur 2d, Interference §§ 1, 7, 11, 12, 50.
[11] 73 Am Jur 2d, Statute of Frauds § 518.
[12] 73 Am Jur 2d, Statute of Frauds § 606.

that, assuming the existence of a contract, Phoenix had not taken any action which amounted to tortious interference was proper because actions for wrongfully inducing a breach of contract are barred where there is an absence of an enforceable contract and because the plaintiff's allegations failed to show that Phoenix took any action which amounts to tortious interference with an advantageous business relationship.

### OPINION OF THE COURT

1. JUDGMENT—SUMMARY JUDGMENT—ISSUES OF FACT—TORT CASES—COURT RULES.

   A motion for summary judgment which states that except as to the amount of damages there is no genuine issue of material fact should be granted only where it is obvious that the nonmoving party's case is subject to some deficiency which cannot be overcome at trial; courts are liberal in finding that genuine issues of material fact do exist, especially in tort cases . (GCR 1963, 117.2[3]).

2. JUDGMENT—SUMMARY JUDGMENT—ISSUES OF FACT—TRIAL BY AFFIDAVIT—JURY TRIAL—COURT RULES.

   A trial court, in granting summary judgment because no issue of fact exists, should be careful to avoid substituting a trial by affidavit and deposition for a trial by jury (GCR 1963, 117.2[3]).

3. JUDGMENT—SUMMARY JUDGMENT—ISSUES OF FACT—JURY SUBMISSIBLE CASE.

   The issue presented by a motion for summary judgment based on no genuine issue of fact is not a determination of whether plaintiff has a jury-submissible case, but simply whether a genuine issue of fact has been raised.

4. JUDGMENT—SUMMARY JUDGMENT—DEPOSITIONS—INFERENCES—CONTRACT— SUBCONTRACTORS—INTERFERENCE WITH CONTRACT—COURT RULES.

   Summary judgment in favor of a defendant-subcontractor in a suit by a plaintiff who was alleging the existence of a contract between the plaintiff and a defendant-contractor, a conspiracy between the defendants to breach the contract between plaintiff and defendant-contractor, and that the defendant-subcontractor had tortiously interfered with that existing contract was improper where the depositions of the agents of the two defendants raised an inference that the defendant-contractor had acted on its own in changing its subcontractors and the deposition by the plaintiff's president raised an opposite inference (GCR 1963, 117.2[3]).

5. Torts—Contracts—Interference with Contract—Interference with Business Relationship—Statute of Frauds—Statutes.

The statute of frauds may not be claimed as a bar in a suit wherein tortious interference with an existing contract or tortious interference with an advantageous business relationship is alleged (MCL 566.132; MSA 26.922).

6. Torts—Contracts—Breach of Contract—Conspiracy to Breach Contract—Statute of Frauds.

A plaintiff who is alleging that a contracting party and a stranger to the contract have conspired to cause a breach of that contract must show a writing sufficient to satisfy the statute of frauds; if the contract is not enforceable against the contracting party, that party would have committed no wrong in not performing the contract, and neither would a stranger to the contractor have committed any wrong.

7. Torts—Contracts—Interference with Contract—Elements.

To prevail on the theory of tortious interference with an existing contract, a party must show that (1) a contract existed, (2) it was breached, (3) a stranger to the contract instigated the breach, and (4) that stranger did so without justification.

8. Torts—Contracts—Interference with Contract—Statute of Frauds—Statutes.

A claimed interfering third party may not raise the statute of frauds as a bar to a suit alleging tortious interference with an existing contract because this tort is not dependent on the enforceability of the contract per se but on the stranger's interference with the contract (MCL 566.132; MSA 26.922).

9. Torts—Tortious Interference with Business Relationship—Elements.

The basic elements which establish a prima facie tortious interference with a business relationship are: the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship or expectancy has been disrupted; one is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation

with another or by preventing a third person from continuing a business relation with another.

10. TORTS—TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP—CONTRACTS—STATUTE OF FRAUDS.

Tortious interference with an advantageous business relationship is not necessarily based on contract; therefore, the statute of frauds is no bar to such a cause of action.

DISSENT BY DANHOF, C. J.

11. TORTS—CONTRACTS—BREACH OF CONTRACT—CONSPIRACY TO BREACH CONTRACT—STATUTE OF FRAUDS—STATUTES.

*There is no legal basis for a claim that a defendant conspired to breach a contract where the statute of frauds applies and there is no writing sufficient to satisfy the statute (MCL 566.132; MSA 26.922).*

12. CONTRACTS—STATUTE OF FRAUDS—MEMORANDUM—PAROL EVIDENCE.

*To satisfy the statute of frauds a memorandum must contain the substantial elements of a contract expressed with such certainty that they may be understood without resort to parol evidence.*

13. TORTS—CONTRACTS—TORTIOUS INTERFERENCE WITH CONTRACT—ABSENCE OF BINDING CONTRACT.

*The absence of a binding contract is a bar to a claim of tortious interference with a contract.*

14. TORTS—INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP—CONTRACTS—STATUTE OF FRAUDS—SUMMARY JUDGMENT.

*The tort of interference with an advantageous business relationship does not depend on the existence of an enforceable contact and, therefore, the statute of frauds is not available as a defense; however, the trial court's grant of summary judgment for a defendant was proper where the plaintiff failed to allege any actions by the defendant which amounted to tortious interference with an advantageous business relationship.*

15. TORTS—TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP—CONTRACTS—ACTIONS WITHOUT JUSTIFICATION—IMPROPER OR ILLEGAL MEANS.

*Not all actions which bring about the nonperformance of a contract or hinder the development of an advantageous business relationship are tortious interference; one is liable only for actions taken without justification; to constitute tortious inter-*

*ference with an advantageous business relationship the means*
*of interference must be "improper or illegal".*

*Richard H. School,* for plaintiff.

*Warner, Norcross & Judd* (by *Robert H. Skilton*
and *Joseph G. Scoville),* for defendant Phoenix
Contractors, Inc.

Before: DANHOF, C. J., and M. J. KELLY and T. M.
BURNS, JJ.

T. M. BURNS, J. Plaintiff Northern Plumbing and
Heating, Inc., appeals by right from the trial
court's grant of summary judgment to defendant
Phoenix Contractors, Inc., under GCR 1963,
117.2(3). Summary disposition of Northern's claims
against Phoenix was improper and is reversed.

I

The underlying facts of this controversy arose
out of bidding for construction contracts on the
waste water treatment plant additions for the City
of Cheboygan. Defendant Henderson Brothers,
Inc., planned to bid as the general contractor for
this project and solicited bids from various me-
chanical subcontractors, including Northern and
Phoenix. In its bid to the city, Henderson listed
Northern as a subcontractor, and this was done on
the belief that Northern was the low bidder for
the mechanical subcontracting work.

What happened from the time of the submission
of the bid by Henderson listing Northern as a
subcontractor until Henderson signed the contract
with the city with Phoenix as the subcontractor,

forms the basis of this action and should be submitted to a jury for factual determination.

## II

Northern filed this suit against Henderson and Phoenix, claiming that it had a contract with Henderson to do the mechanical subcontracting work based on the custom in the trade and alleging a conspiracy between Henderson and Phoenix to breach that contract, tortious interference by Phoenix with the contract, and, alternatively, if no contract was found, tortious interference by Phoenix of an advantageous business relationship with Henderson. In this appeal, only Northern's claims against Phoenix are involved.

In response to the complaint, Phoenix filed motions for accelerated judgment, GCR 1963, 116.1(5), based on the statute of frauds, MCL 566.132; MSA 26.922, and summary judgment, GCR 1963, 117.2(3), claiming there were no genuine issues of material fact with regard to the happening of acts of interference by Phoenix employees or causation, *i.e.,* that Henderson did not contract with Northern, or that Henderson breached its contract with Northern, if one existed, solely for its own reasons, rather than any act by Phoenix.

After the parties had taken some depositions and submitted affidavits, the trial court granted Phoenix' motion for summary judgment. In doing so, the court assumed the existence of a contract but held that there was no showing that Phoenix had interfered with or caused Henderson to breach that contract. In effect, the court ruled that it was solely Henderson's decision not to proceed with Northern as the subcontractor on the Cheboygan project. In doing so, the court erred.

### III

The courts are liberal in finding that genuine issues of material fact do exist, especially in tort cases, and a motion under rule 117.2(3) should be granted only where it is obvious that the nonmoving party's case is subject to some deficiency which cannot be overcome at trial. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973).

In ruling that no issue of fact exists, the court must be careful to avoid substituting a trial by affidavit and deposition for trial by jury. *Freeman v Massachusetts Mutual Life Insurance Co,* 27 Mich App 572; 183 NW2d 832 (1970). The court is not allowed to make findings of fact or to weigh the credibility of affiants or deponents. *Bilicki v W T Grant Co,* 382 Mich 319; 170 NW2d 30 (1969), *Baker v Detroit,* 73 Mich App 67; 250 NW2d 543 (1976). The test is not whether plaintiff has presented facts sufficient to show a jury submissible case in response to the motion, but rather, whether there are genuine issues of material fact. *Smith v Woronoff,* 75 Mich App 24; 254 NW2d 637 (1977).

With these principles in mind, it is held: that issues of fact do exist in regard to the existence of a contract, any acts of interference by Phoenix, and whether those acts were the cause of Henderson's decision not to use Northern on this project. See, *Hutchings v Dave Demarest & Co,* 52 Mich App 274; 217 NW2d 72 (1974). The depositions of Phoenix' and Henderson's agents do tend to show that Henderson acted entirely on its own in proceeding with Phoenix as the subcontractor, but Northern's president's deposition raises the opposite inference. It is not for us or the trial court to decide this matter, but for the trier of fact. Given

that the trial court allowed only a short period for plaintiff to show the existence of fact issues, it is not surprising that a complete case was not presented at the motion hearing.[1]

## IV

Since the trial court assumed the existence of a contract, it never reached the question of the statute of frauds, and the effect it would have on the tortious conduct alleged by plaintiff against Phoenix.

Northern alleged three distinct torts against Phoenix; (1) a conspiracy to breach a contract between Phoenix and Henderson, (2) tortious interference with an existing contract by Phoenix, and (3) tortious interference with an advantageous business relationship. The statute of frauds is not a bar to the second and third actions.

### A. *Conspiracy*

Where there is an allegation that a contracting party and a stranger to the contract have conspired to cause a breach of that contract, the plaintiff must show a writing sufficient to satisfy the statute of frauds. *Jaques v Smith,* 62 Mich App 719; 233 NW2d 839 (1975), *lv den,* 395 Mich 829

---

[1] The hearing on these motions and plaintiff's request for an injunction was originally held on December 17, 1976. After plaintiff withdrew his application for an injunction, the court adjourned the proceedings until January 3, 1977, for the taking of depositions.

At the adjourned hearing, plaintiff presented testimony on the issues of contract formation (industry practice) and the relationship of Phoenix' bid to Northern's concerning which was lower. The depositions of employees and officers of the various companies involved were also presented, but it is clear that not everyone that plaintiff would call in the trial was heard from at this hearing.

(1976).[2] If the contract is not enforceable against the contracting party, he would have committed no wrong in not performing the contract, and neither would a stranger to the contract. 16 Am Jur 2d, Conspiracy, § 50. Different considerations apply to the other allegations in this case.

### B. *Tortious interference with an existing contract*

To prevail on this theory, plaintiff must show that a contract existed, that it was breached, that Phoenix instigated the breach and that it did so without justification. *Dassance v Nienhuis,* 57 Mich App 422; 225 NW2d 789 (1975).

There is a division in the authorities concerning whether the interfering third party may rely on a contract defense, such as the statute of frauds, to defeat this action. See, 45 Am Jur 2d, Interference, § 9, p 286. Our Supreme Court has not specifically held for either position but in *Coronet Development Co v F S W, Inc,* 379 Mich 302, 313; 150 NW2d 809 (1967), the Court stated:

"We are not unmindful of the strongly urged contention of plaintiff that the inducing of the breach of a contract, even though the contract be unenforceable under the statute of frauds, is actionable. With the proposition in general terms we have no disagreement. The authorities cited in support thereof sustain it."[3]

[2] *Williams v De Man,* 7 Mich App 71; 151 NW2d 247 (1967), did not deal specifically with the statute of frauds question. The court there found that, in fact, no contract existed and held that there must be a contract, something which is not disputed here. The question isn't whether there must be a contract, but whether that contract is subject to contract defenses by a noncontracting party.

[3] It is not entirely clear from the report of *Coronet Development Co v F S W, Inc, supra,* whether the Court was dealing with a conspiracy case exclusively or also a claim of interference by noncontracting parties, or both. The language quoted would seem to apply only where the allegation is against only a noncontracting party.

The statute of frauds is not a bar to this type of action. This is a tort, not dependent on the enforceability of the contract per se, but rather, on the stranger's interference with it. Plaintiff must still show all of the elements for contract formation, that is, that a contract existed, but it is not necessary to show that the contract is enforceable in an action at law against the other contracting party.

## C. *Tortious interference with advantageous business relationships*

"The basic elements which establish a prima facie tortious interference with a business relationship are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another." 45 Am Jur 2d, Interference, § 50, p 322.

Since this tort is not necessarily based on contract, the statute of frauds would be no bar.

## V

The heart of this case is whether genuine issues of material fact exist relating to contract formation, whether Phoenix engaged in any acts of interference with the contract if one existed, or

with an advantageous business relationship if no contract existed, and whether those acts induced Henderson to end its relationship with Northern. It is held that there are questions of fact, the summary judgment is reversed and the matter is remanded for trial. The type of actions alleged by Northern are not well developed in this state, and plaintiff should be allowed to proceed to trial. *Hutchings v Dave Demarest & Co, supra.* Whether Northern will ultimately prevail depends on the facts that it will be able to present at trial, not on affidavits and depositions.

Reversed and remanded for proceedings not inconsistent with this opinion. Costs to appellant.

M. J. KELLY, J., concurred.

DANHOF, C. J. *(dissenting).* This controversy arose out of the construction project. Defendant, Henderson Brothers, Inc. (Henderson) is a general contractor which, through a trade publication, requested sealed bids from subcontractors, including both plaintiff, Northern Plumbing and Heating, Inc. (Northern), and defendant, Phoenix Contractors, Inc. (Phoenix). In submitting its own bid to the city, Henderson listed Northern as a subcontractor in the belief that Northern was the low bidder. From this point on the testimony and allegations are in conflict.

Mr. Buday, President of Northern, stated that when he arrived at Henderson's office to fill out equipment questionnaires, Mr. Robinson of Henderson's told him that two men from Phoenix had been in asking why Henderson had not chosen Phoenix, stating that Northern might not be capable of doing the job, and generally "badmouthing" Northern. Also at the meeting, Mr. Buday was questioned about Northern's ability to get a per-

formance bond. Although this was never mentioned before, Henderson claimed that Northern must be bonded if Henderson was to get a performance bond which was required by the contract.

Mr. Buday also testified that he later asked Mr. Henderson if "someone was knocking on your back door" and that he answered that Phoenix was. Mr. Henderson says that he might have made this statement. Around August 4, 1976, over lunch, some men from Henderson attempted to get Northern to agree to withdraw its bid in return for other work on the project. No agreement was reached. A day or so later, Henderson attempted to get Mr. Buday to sign a hold harmless agreement, but he refused to do so. On October 16, 1976, the city signed the contract with Henderson as general contractor, listing Phoenix as a subcontractor. Henderson then placed a purchase order with Phoenix for subcontracting work. Plaintiff then filed suit. The trial judge granted Phoenix's motion for summary judgment stating that even if he assumed there was a contract between Henderson and Northern, he could not find allegations which would indicate that defendant tortiously interfered with plaintiff's contract.

In his complaint plaintiff alleges that Phoenix committed three distinct torts: (1) a conspiracy to breach a contract between Northern and Henderson, (2) tortious interference with an existing contract, and (3) tortious interference with an advantageous business relationship. The trial judge granted defendant's motion for summary judgment on the grounds that, assuming the existence of a contract, Phoenix had not taken any actions which amounted to tortious interference. I would hold that the order of summary judgment was proper

since actions for wrongfully inducing a breach of contract are barred by the absence of an enforceable contract and because plaintiff's allegations failed to show that Phoenix took any action which amounts to tortious interference with an advantageous business relationship.

I

I agree with the majority that one must show an enforceable contract as a prerequisite to establishing a claim for conspiracy to breach a contract. When the statute of frauds, MCL 566.132; MSA 26.922, applies and there is no writing sufficient to satisfy the statute, there is no legal basis for a claim that defendant conspired to breach that contract, *Jaques v Smith,* 62 Mich App 719; 233 NW2d 839 (1975), *lv den* 395 Mich 829 (1976). The statute is applicable since the construction time was estimated at 900 days with mechanical subcontracting being one of the last jobs to be performed. The principle is well settled that to satisfy the statute of frauds the memorandum must contain the substantial elements of a contract expressed with such certainty that they may be understood without resort to parol evidence, *Messmore v Cunningham,* 78 Mich 623; 44 NW 145 (1889), *Association of Hebrew Teachers v The Jewish Welfare Federation,* 62 Mich App 54; 233 NW2d 184 (1975). Plaintiff contends that the requirements of the statute of frauds were satisfied by the proposal Henderson submitted to the city which listed Northern as the subcontractor and certain notes made by Henderson in computing the bids. These writings are not sufficient for the statute of frauds because they do not contain all the substantial elements of the contract.

As plaintiff asserts, the proposal submitted by

Henderson may incorporate the city's contract which lists the materials required and specifications. Even though this would provide substantial details on some issues, it does not cover all the terms. It does not purport to spell out any of the many possible alternatives that could govern a contractor-subcontractor relationship, such as manner of payment or penalty provisions. In a very similar case, the Washington Supreme Court also concluded that "[s]uch essentials, as manner of payment, time for completion of the mechanical portion of the work, penalty provisions, bonding, etc., are normally critical to any construction contract". *The Plumbing Shop, Inc v Pitts,* 67 Wash 2d 514, 518; 408 P2d 382 (1965). The other internal working papers mentioned by the plaintiff do not cure this deficiency since they do not contain any internal reference to the proposal or each other, *Hewett Grain & Provision Co v Spear,* 222 Mich 608; 193 NW 291 (1923). I agree with the majority that if a contract is not enforceable, then the contracting party would not be liable for damages for nonperformance and neither would he, or a stranger, be liable for agreeing to not perform.

## II

However, I cannot agree with the majority that the absence of a binding contract is not a bar to a claim of tortious interference with a contract. This holding is not consistent with the holding on the conspiracy claim or the *ratio decidendi* of *Jaques v Smith, supra.* Since the claim of conspiracy to breach a contract requires an enforceable contract, *Jaques v Smith, supra,* so does the claim for tortious interference. These claims, even though they sound in contract, are both essentially tort claims, 16 Am Jur 2d, Conspiracy, § 56, p 154. As

the Court stated in *Roche v Blair,* 305 Mich 608, 613–614; 9 NW2d 861 (1943),

"The law is well established that in a civil action for damages resulting from wrongful acts alleged to have been committed in pursuance of a conspiracy, the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damages. The conspiracy standing alone without the commission of acts causing damage would not be actionable. The cause of action does not result from the conspiracy but from the acts done."

See also *Fenestra, Inc v Gulf American Land Corp,* 377 Mich 565; 141 NW2d 36 (1966), *Bush v Sprague,* 51 Mich 41; 16 NW 222 (1883). The major difference between the conspiracy claim and the tortious interference claim is that the conspiracy claim contains an additional element of an agreement between the nonperforming party and the stranger. The tort of (nonconspiracy) interference with a contract does not require this agreement. The gravamen of the conspiracy claim is that plaintiff suffered damages from the nonperformance of an enforceable contract. If a person does not suffer recoverable damages from the nonperformance of a nonenforceable contract, or from an agreement between the other party and the stranger not to perform a nonenforceable contract, likewise he should not recover any damages from the nonperformance of a nonenforceable contract which is induced by a stranger.

## III

The tort of interference with an advantageous business relationship does not depend on the existence of an enforceable contract and therefore the statute of frauds is not available as a defense to

these claims. However, I would affirm the order of summary judgment for the reasons given by the trial court, specifically, because plaintiff failed to allege any actions by defendant which amounted to tortious interference with an advantageous business relationship. To establish tortious interference with an advantageous business relationship by a competitor, one must show the use of improper or illegal means, 4 Restatement Torts, § 768, p 71; 45 Am Jur 2d, Interference, § 31, p 308. Plaintiff has not alleged the use of improper or illegal means.

Not all actions which bring about the nonperformance of a contract or hinder the development of an advantageous business relationship are tortious interference. One is liable only for actions taken without justification, 4 Restatement Torts, § 766, p 49, 45 Am Jur 2d, Interference, § 27, p 304; Prosser, Torts (4th ed), § 130, p 949. Public policy considerations weigh heavily in determining what constitutes tortious interference and when liability is not imposed because the actions are justifiable. In determining the standard of conduct relating to tortious interference, the law for policy reasons distinguishes between tortious interference with a contract and tortious interference with an advantageous business relationship. Certain actions which constitute tortious interference with a contract are not tortious in reference to interference with an advantageous business relationship. In other words, the reasons justifying interference with an advantageous business relationship may not be sufficient to justify the same action if it will interfere with a binding contract.

The primary reason for the requirement of "improper or illegal" means in a claim for tortious interference with an advantageous business rela-

tionship, rather than the standard used in contract
cases, is to avoid unnecessarily stifling competi-
tion. The social desirability of encouraging compe-
tition will justify some actions in an advantageous
business relationship case which would be tortious
if a contract existed. A contract represents the
final product of competition and when a contract
is finally concluded, public policy favors the stabil-
ity and planning made possible by it. Conse-
quently, since most of the goals of competition
have already been achieved, the law imposes liabil-
ity on one who interferes with the performance of
the contract. However, if a final agreement has
not been reached, legitimate competition is still
desirable. The courts are more reluctant to impose
liability for actions taken in the furtherance of
competition at this stage. The law does not want to
unnecessarily restrict the available means of com-
petition. It is for this reason, that one is only
liable for tortiously interfering with an advanta-
geous business relationship if he uses improper or
illegal means.

To use the same standard in advantageous busi-
ness relationship cases as is used in contract cases
would unnecessarily restrict competition two ways.
To apply this standard to all advantageous busi-
ness relationship cases would unnecessarily limit
the available means of competition in all advanta-
geous business relationship cases. Also, because of
the uncertainty of determining when an advanta-
geous business relationship exists, the application
of this standard of conduct could also chill compe-
tition in all cases on the fringe of an advantageous
business relationship. The courts are reasonably
certain of when an enforceable contract exists, but
the perimeters of an advantageous business rela-
tionship have not been precisely established yet.

Therefore, the fear of tort liability and the uncertainty of knowing whether an advantageous business relationship exists, could unnecessarily chill competition even in cases where an advantageous business relationship does not exist, if the standard used in interference with contract cases is applied.

Plaintiff has failed to allege any actions by defendant which meet the "illegal-or-improper means" requirement.[1] The questioning of plaintiff's ability to secure a performance bond is not an improper means of competition. Plaintiff has not alleged any improper motive on the part of defendant in taking this action. Also the mere allegation of "badmouthing" is not sufficient. Plaintiff does not allege any fraud, defamation, or bad motive on the part of defendant or even that the statements made were untrue, *Regal Home Distributors, Inc v Gordon,* 45 Del 49; 66 A2d 754 (1949). Even accepting the allegations as true, and realizing that such a practice is of questionable ethics, it does not amount to an improper or illegal method of competition, 45 Am Jur 2d, Interference, § 31, p 308. Consequently, summary judgment was proper on plaintiff's claim of interference with an advantageous business relationship.

---

[1] For cases interpreting "illegal or improper" means, *see Show Management v Hearst Publishing Co Inc,* 196 Cal App 2d 606; 16 Cal Rptr 731 (1961), *Coleman & Morris v Pisciotta,* 279 App Div 656; 107 NY Supp 2d 715 (1951), *Terry v Dairymen's League Cooperative Association,* 2 App Div 2d 494; 157 NY Supp 2d 71 (1956), *Brause v First National Real Estate Trust,* 25 App Div 2d 624; 267 NY Supp 2d 876 (1966), *Regal Home Distributors, Inc v Gordon,* 45 Del 49; 66 A2d 754 (1949), *Martin v Phillips Petroleum Co,* 455 SW2d 429 (Tex Civ App, 1970).