**STORMOR, A DIVISION OF FUQUA INDUSTRIES, INC., Plaintiff,**

**v.**

**Howard JOHNSON, et al., Defendants.**

**File No. K83–445 CA.**

United States District Court, W.D. Michigan, S.D.

May 9, 1984.

J. Michael Smith, Carol Van Auken-Haight, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for plaintiff.

John A. Waters, Jeffrey P. Kirchhoff, Grand Rapids, Mich., for defendants.

OPINION

BENJAMIN F. GIBSON, District Judge.

This suit arises out of the advertising and sale of grain drying equipment manufactured by plaintiff. Plaintiff's parent company, Fuqua Industries, is the owner of the registered trademarks STORMOR and EZEE–DRY [1] which are used in connection with grain storage and drying equipment. Defendants Howard Johnson and DeVere Dennings, former employees of plaintiff's authorized distributor in Michigan, went into business for themselves selling agricultural equipment of several manufacturers including plaintiff.

In its original four-count complaint, plaintiff asserted state, federal and common-law claims against the defendants based on the defendants' purchase, advertising and sale of plaintiff's trademarked products. Now before the Court are plaintiff's motion for a preliminary injunction to prohibit defendants from advertising for sale any of plaintiff's trademarked products except in connection with specific used Stormor products; plaintiff's motion to amend the complaint; and defendant's motion for partial judgment on the pleadings.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction to prevent defendants from advertising the availability of plaintiff's trademarked products. To justify imposition of a preliminary injunction under the Lanham Trade-Mark Act, 15 U.S.C. § 1051 *et seq.*, "[t]here must be a showing of (A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville,* 670 F.2d 642, 651 (6th Cir.1982). The court addresses the merits of plaintiff's claim first.

1. For purposes of this opinion, plaintiff Stormor is treated as the owner of the registered trademarks of its parent company, Fuqua Industries, Inc.

*Trademark Infringement*

Plaintiff claims that defendants' advertising of genuine Stormor products constitutes trademark infringement and unfair competition under 15 U.S.C. § 1114(1)[2] which provides in pertinent part:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or mistake or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy of colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided....

In order to prevail on its trademark infringement claim under 15 U.S.C. § 1114, Stormor "must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake, or to deceive." *Burger King v. Mason*, 710 F.2d 1480, 1491 (11th Cir.1983).

■ Plaintiff claims that defendants' use of the STORMOR and EZEE–DRY trademarks, although used to advertise genuine trademarked products, infringes Stormor's trademarks by suggesting to potential purchasers that defendants are "authorized" dealers for those products. It is now well-settled that trademark infringement occurs when a defendant uses the plaintiff's trademark in a manner that suggests that the defendant is affiliated with the plaintiff's company even though the defendant deals in the goods of the trademark owner. *See Trail Chevrolet, Inc. v. General Motors Corp.*, 381 F.2d 353 (5th Cir.1967) (per curiam) (upholding a permanent injunction against defendant's use of the registered trademark Chevrolet in its advertising where the district court found that such use was likely to cause the public to believe that they were dealing with a business that was sponsored, supervised, endorsed or otherwise connected with the plaintiff); *Volkswagenwerk Aktiengesellschaft v. Volks City, Inc.*, 348 F.2d 659 (3rd Cir. 1965) (upholding the district court's preliminary injunction enjoining defendant from using the Volkswagen trademark or any other name commonly associated with Volkswagen products where the trial court had found that defendant's advertisements were clearly intended to convey the impression of affiliation with plaintiff); *Prompt Electrical Supply Co. v. Allen-Brady Co.*, 492 F.Supp. 344 (E.D.N.Y.1980) (holding that a former authorized distributor's use of the registrant's trademark after termination of the distributorship agreement constituted trademark infringement even though the distributor continued to deal in the trademarked products). *See also National Football League v. Governor of State of Delaware*, 435 F.Supp. 1372 (D.Del.1977).

■ It is equally well-settled that not every use of another's trademark without

---

**2.** Plaintiff has filed a motion to amend the complaint to add a claim for unfair competition under 15 U.S.C. § 1125. The Ninth Circuit has stated that the test for false designation under 15 U.S.C. § 1125 is similar to that for infringement of a registered trademark under 15 U.S.C. § 1114. "Both statutes preclude the use of another's trademark in a manner likely to confuse the public about the origin of goods. [citation omitted]." *International Order of Job's Daughters v. Lindeburg and Company*, 633 F.2d 912, 917 (9th Cir.1980). Since plaintiff sought the preliminary injunction prior to moving to amend the complaint, the Court only considers plaintiff's claims under 15 U.S.C. § 1114 in determining the necessity of issuing a preliminary injunction.

the owner's consent amounts to trademark infringement or unfair competition. For instance, in *Prestonettes v. Coty,* 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731, the Supreme Court concluded that a repackager of perfume products could lawfully use the registered trademarks of the company from which it bought the perfume in bulk when labelling the repacked goods. *See also Monte Carlo Shirt, Inc. v. Daewoo International (America) Corp.,* 707 F.2d 1054 (9th Cir.1983) (affirming summary judgment in favor of defendant on shirt company's claim of trademark infringement under California law where defendant sold shirts manufactured for plaintiff and bearing plaintiff's unregistered trademark through its discount marketing subsidiary after plaintiff rejected the shirts from the manufacturer because of late delivery); *Volkswagenwerk Aktinengesellschaft v. Church,* 411 F.2d 350 (9th Cir.1969) (upholding the district court's determination that defendant did not infringe plaintiff's trademark where the trademark was used in a fashion which adequately distinguished defendant's business from that of plaintiff); and *Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.,* 299 F.2d 33 (2d Cir.1962) (holding that the defendant did not infringe Dior trademarks by using them to advertise dresses as copies of Dior originals).

It is against this background that the Court must assess plaintiff's claim that defendants' use of STORMOR and EZEE–DRY amount to infringement. Through the affidavits in support of the motion for a preliminary injunction and the testimony of its witness at the hearing held January 26, 1984, plaintiff asserts that the buying public for grain-drying equipment assumes that a dealer advertising particular equipment is an authorized distributor of those products. Plaintiff claims that any advertising of its products necessarily suggests to the public that the retail seller has a more direct relationship to plaintiff, the manufacturer, than that of simply a purchaser and reseller.

While defendants dispute the contention that sales of grain handling equipment are made exclusively through authorized dealers, they agree that these products are usually sold through an authorized dealer or a subdealer operating through an authorized dealer. Although defendants claim to have a source for Stormor products and assert that they have had in the past a subdealer arrangement with an authorized Stormor distributor, the testimony of the witnesses at the hearing and the affidavits submitted in support of the preliminary injunction establish that neither defendant is an authorized dealer or an acknowledged subdealer for plaintiff's products. Consequently, they are not, in fact, affiliated with the plaintiff. Nor do defendants otherwise have permission to use plaintiff's trademarks in a manner that suggests that they are affiliated with Stormor.

Although the Court agrees that unauthorized sale of a genuine trademarked product without more does not constitute trademark infringement, *Monte Carlo Shirt, supra,* the Court concludes that additional factors are involved here because defendants have used plaintiff's trademarks in a manner which is likely to cause the public to believe that defendants are part of Stormor's authorized sales network. This is so even though defendants do not use the Stormor trademarks in their firm names.

The testimony and exhibits offered at the hearing and the affidavits submitted in support of the preliminary injunction establish that defendants have used plaintiff's trademarks STORMOR and EZEE–DRY on several occasions. The record shows that defendants used plaintiff's promotional literature which had been stamped with defendants' names to advertise the availability of plaintiff's products. The record also shows that defendants used plaintiff's trademarks at a booth they erected at a trade show in Lansing, Michigan and in an advertisement placed in the November 19, 1983 issue of Michigan Farmer. It is also uncontested that defendants are former employees of plaintiff's authorized dealer

in Michigan. Considering these factors in light of plaintiff's need to show only "likelihood of confusion" resulting from defendants' use of its trademarks to establish a claim of trademark infringement under 15 U.S.C. 1114, the Court concludes, based upon the present record, that plaintiff has demonstrated a likelihood of success on the merits. This conclusion is reinforced by an affidavit which indicates that at least one potential purchaser of Stormor products was actually confused about one of the defendants' status as an authorized Stormor dealer.

*Irreparable Harm*

Before this Court can enter a preliminary injunction, it must be convinced that irreparable harm will ensue unless this extraordinary relief is granted. Plaintiff claims that it has lost sales and will continue to lose sales because potential buyers may purchase competing products from defendants, particularly since defendants are authorized dealers for certain of plaintiff's competitors. Stormor also claims that it suffers and will continue to suffer damage to its business reputation from defendants' use of its registered trademarks in a manner which suggests that defendants are authorized dealers for Stormor products.

■ The Court finds persuasive evidence that plaintiff will suffer irreparable injury if defendants are permitted to use the STORMOR and EZEE–DRY trademarks in a manner which suggests that defendants are authorized dealers for Stormor products. While plaintiff has not established that defendants' activities will result in lost sales, the Court nevertheless concludes that there is a substantial risk of irreparable harm to plaintiff's business reputation by defendants' use of plaintiff's trademarks in a manner that causes the public to believe that defendants are affiliated with plaintiff. Such a risk of harm is sufficient to warrant granting preliminary relief. *See, e.g., Ideal Industries, Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir.1979); *Coca Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 317 (2d Cir. 1982). *But cf. Bell & Howell: Mamiya*

*Co. v. Masel Supply Co.,* 719 F.2d 42, 46 (2d Cir.1983) (there is no significant likelihood of damage to trademark owner's business reputation by defendant's sale of genuine goods manufactured by the same source as plaintiff's goods.)

■ Although a showing of success on the merits and irreparable harm are necessary before a court may grant a preliminary injunction, the Court must also consider whether the injury to plaintiff outweighs the damage the proposed injunction may cause the opposing party. Plaintiff seeks to prevent defendants from using the STORMOR and EZEE–DRY trademarks except when advertising specific used Stormor products. Defendants argue that enjoining them from advertising or selling STORMOR EZEE–DRY units would result in irreparable injury to them through lost sales of those products. Weighing the competing interests of plaintiff and defendants in light of the arguments described above, the Court concludes that plaintiff is entitled to relief by way of a preliminary injunction. Such preliminary relief, however, must be designed to protect plaintiff's interests without imposing undue hardship on defendants.

■ For the foregoing reasons, until further order of this Court, the defendants and each of them and their agents, employees, alternates and successors, and anyone connected therewith shall be enjoined from using the STORMOR and EZEE–DRY trademarks in any display or advertising unless accompanied by the following statement in print of the same size and style as the text of the display or advertisement and located immediately adjacent to the trademarks: "The Seller is Not Affiliated With Stormor Division of Fuqua Industries."

MOTION TO AMEND COMPLAINT

■ Plaintiff seeks permission to file its first amended complaint adding a claim for unfair competition under 15 U.S.C. § 1125 and Michigan common law. Rule 15(a) of the Federal Rules of Civil Procedure states

that courts shall freely grant leave to amend pleadings when justice so requires. In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court declared that "this mandate is to be heeded."

The motion to amend comes early in this litigation and the claims sought to be added are closely related to existing claims. Defendants do not oppose the motion to amend. Consequently, the Court will grant plaintiff's motion to file its first amended complaint.

## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

■ Defendants have filed a motion for partial judgment on the pleadings under Fed.R.Civ.P. 12(c) claiming that plaintiff has failed to state a claim for relief in counts one and four of the original complaint. Since the parties have asked the Court to consider matters outside of the pleadings, the Court will treat this motion as one for summary judgment pursuant to Fed.R.Civ.P. 56 which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 147, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse*, 527 F.2d 1008, 1011 (6th Cir.1976). The opposing party need present its own factual material only if the movant has first met this burden. "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary mat-

ter is presented." Advisory Committee Note, 1963 Amendment to Rule 56(e).

■ In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962). Even if the basic facts are not disputed summary judgment may be inappropriate when contradictory inferences may be drawn from them. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *E.E.O.C. v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189*, 427 F.2d 1091, 1093 (6th Cir.1970). Although summary judgment may properly be entered in any type of civil action, the Court must be "extremely hesitant to grant summary judgment on important and complex issues" without an adequate factual basis in the record. *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976).

In count one plaintiff claims that defendants intentionally interfered with plaintiff's contractual and business relations with its Michigan distributor. Count four merely sought a declaratory judgment that defendants' acts—purchasing, advertising and selling plaintiff's products—amounted to intentional interference with plaintiff's contractual and business relations with its Michigan distributor.

In order to establish a prima facie case of tortious interference with contractual relations "[p]laintiff must show that: a contract existed, it was breached, defendant instigated the breach, and defendant did so without justification." *Derosia v. Austin*, 115 Mich.App. 647, 653, 321 N.W.2d 760 (1982) (citing *Northern Plumbing & Heating v. Henderson Brothers, Inc.*, 83 Mich.App. 84, 268 N.W.2d 296).

Defendants argue that they are entitled to judgment as a matter of law with respect to plaintiff's claim in Count I since there has been no breach of the contract between Stormor and its Michigan distributor.

The Michigan Court of Appeals has adopted the following definition of tortious interference with advantageous business relationships:

> The basic elements which establish a prima facie tortious interference with a business relationship are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another.

*Northern Plumbing & Heating, Inc. v. Henderson Brothers, Inc.*, 83 Mich.App. 84, 93, 268 N.W.2d 296 (1978). Again, defendants argue that they are entitled to judgment as a matter of law on plaintiff's claim for intentional interference with business relations because the record shows that there has been no breach or termination of the advantageous business relationship between Stormor and its Michigan distributor.

In response to the motion, plaintiff argues that it need not allege that breach occurred, but simply that defendants' conduct has made the performance of its contract with its distributor more burdensome or expensive. In support of its argument, plaintiff cites § 766A of the Second Restatement of Torts. Under that section, "[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

Although no Michigan court has specifically recognized a cause of action such as that described in § 766A of the Second Restatement of Torts, Michigan courts have imposed liability for various forms of intentional interference with economic relationships. At this point in these proceedings, the Court is not prepared to say that, resolving all factual disputes in favor of plaintiff, defendants are entitled to judgment as a matter of law. Whether the harm suffered by plaintiff as a result of defendants' conduct is of a character and magnitude which justifies imposing liability upon defendants for the tort of intentionally interfering with plaintiff's contractual and business relationships is a mixed question of law and fact, resolution of which should await fuller development of the record. Consequently, the Court will deny defendants' motion for partial judgment on counts one and four of the complaint.